## UNITED STATES of America

v.

Nephtali DEJESUS, a/k/a "King 75," Marcelino Saavedra, a/k/a "King Maas," and Luis Rodriguez, a/k/a "King Pirate," Defendants.

No. 98 Cr. 396(SAS).

United States District Court, S.D. New York.

Dec. 22, 1998.

Kevin S. Reed, David C. Finn, Assistant United States Attorneys, New York, NY, for the United States of America.

Martin J. Siegel, New York, NY, for Defendant Luis Rodriguez.

Lee Ginsberg, Freeman, Nooter & Ginsberg, New York, NY, for Defendants Nephtali DeJesus and Marcelino Saavedra.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

On October 9, 1998, a jury found defendants Nephtali DeJesus, Marcelino Saavedra, and Luis Rodriguez guilty on two counts of a superseding indictment: conspiring (Count One) and attempting (Count Two) to commit assault with a dangerous weapon or resulting in serious bodily injury, for the purpose of maintaining their positions in a racketeering enterprise, namely the Almighty Latin King Queen Nation (the "Latin Kings"), in violation of 18 U.S.C. § 1959(a)(6). Now before the court are defendants' motions to set aside the verdict pursuant to Rule 29 of the Federal Rules of Criminal Procedure. All three defendants challenge the verdict on venue grounds while defendant Rodriguez also claims that the evidence against him was legally insufficient and that certain comments by the prosecutor during summation denied him a fair trial.

*Background*

The evidence at trial showed the following.

On the night of October 23, 1997, defendants attended a meeting with other members of the Latin Kings where they planned an assault on a former Latin King member named Jose Sierra, a/k/a King Little. The meeting was held in Brooklyn, New York. At the meeting, DeJesus repeatedly described for Rodriguez, Saavedra and the other Latin Kings how King Little had beaten up his girlfriend and threatened him earlier in the day. Trial Transcript ("Tr.") 118–19. The assembled Latin Kings, in response, agreed that they would "do Little," "duff" Little, and/or make Little "feel it" on the street. Tr. 120, 159–60, 162, 165–66, 184, 290–91. In anticipation of executing the plan, all the Latin Kings present, including defendants, gathered in a circle and recited a blessing known as the Mortal Warrior Prayer, which the Latin Kings say only before they go to war. Tr. 138–39, 176–77. The Latin Kings proceeded to leave the meeting in small groups to travel to the site of the planned assault without attracting attention. Tr. 120–21, 167, 295–96. King Little was to be confronted at the corner of Newkirk Avenue and Rugby Avenue, in Brooklyn, New York. Tr. 139. The police arrested the group as they left the meeting. Tr. 291. Each of the defendants was arrested in a different spot, but the evidence showed that all were headed to the location where they expected King Little to be found. Tr. 47–53, 68–78.

Two former Latin King members who were present at the October 23 meeting, Victor Colon and Jorge Pacheco, testified about how the laws of the Latin Kings required all of those present at the October 23 meeting to participate in the planned assault. Pacheco explained that when a Latin King has a "beef"—a dispute—with an outsider that was prompted by physical force, the beef is usually resolved with more force. Tr. 280. Pacheco further explained that "a King never fights alone" and that he had never seen anyone refuse to go to a beef. Tr. 280, 284–85.

Colon and Pacheco also testified about the Latin Kings' connection to Manhattan. Pacheco said that he regularly attended Latin King meetings in Manhattan, and both Pacheco and Colon testified about "Universal Meetings," which were held every month in Manhattan. Tr. 103–04, 283. At Universal Meetings, the Supreme Crowns of the Latin Kings presided and Latin King members from all over New York and the surrounding states attended. Tr. 100–04, 282–83. Latin King business was conducted at these meetings, including collecting money from various "Tribes." Tr. 245–46. In fact, Colon testified that one of the subjects discussed at the October 23 meeting was the alleged theft of money to be turned in at a Universal Meeting scheduled for that very day. Tr. 110, 178–79, 245–48.

*Discussion*

A. *Venue.*

■ Rodriguez devotes nearly all of his submission to arguing that the government must prove venue beyond a reasonable doubt. This argument is without merit. As the court instructed the jury, the government need only establish venue by a preponderance of the evidence. *See, e.g., United States v. Rosa,* 17 F.3d 1531, 1541–42 (2d Cir.1994); *United States v. Naranjo,* 14 F.3d 145, 146 (2d Cir.1994). In any event, defendants waived any complaint about the appropriate standard of proof by failing to object to the court's jury charge. *See United States v. Gonzalez,* 922 F.2d 1044, 1055 (2d Cir.1991).

■ The remaining venue issue concerns the sufficiency of the government's proof. In the case of a continuing offense, an offense committed over time, venue lies "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *see Naranjo,* 14 F.3d at 147. Racketeering offenses under 18 U.S.C. § 1962 are continuing offenses within the meaning of the venue statute. *See, e.g., United States v. Castellano,* 610 F.Supp. 1359, 1388 (S.D.N.Y.1985). Likewise, section 1959 offenses, violent crimes in aid of racketeering activity, have been held to be continuing offenses. *See United States v. Yu,* No. 97 Cr. 102(SJ), 1998 WL 57079, at *3 (E.D.N.Y. Feb. 5, 1998); *United States v. Perez,* 940 F.Supp. 540, 547–49 (S.D.N.Y.1996). As a result, the government may prosecute Counts One and Two of the indictment, violations of 18 U.S.C. § 1959(a)(6), in any district in which the related racketeering enterprise operated. *See Perez,* 940 F.Supp. at 547–49; Order, 98 Cr. 396(SAS), September 29, 1998, at 6. Indeed, defendants acknowledged as much by their failure to object to the court's instructions to the jury on what the government must prove to establish venue. *See* Tr. 564 ("[I]f you find that the racketeering enterprise operated in part in the Southern District of New York, then the government has satisfied its venue obligations."). To the extent that defendants now suggest that greater or different proof was required, that argument is waived by their failure to object to the jury charge. *See* Fed.R.Crim.P. 30; *Gonzalez,* 922 F.2d at 1055.

■ To be sure, the principal activities that establish the crimes charged in Counts One and Two occurred outside of the Southern District, in Brooklyn. But as the discussion in the preceding paragraph reveals, the government has a significant amount of discretion in deciding where to bring an indictment for a section 1959 offense. All that is required is that

the racketeering enterprise operate in the district in which the prosecution takes place. The government has met this modest burden. The government presented proof that the Latin Kings held monthly Universal Meetings in Manhattan where the entire membership of the Latin Kings convened to conduct various business, including the collection of dues. And a witness testified that a Universal Meeting was scheduled for the same day that defendants planned their assault on King Little. From this evidence the jury could properly conclude that the Latin Kings, a racketeering enterprise, operated in the Southern District of New York at the time of the conspiracy and attempt to assault.

### B. *Sufficiency of the Evidence*

 A defendant challenging a conviction on sufficiency grounds faces a heavy burden. *See, e.g., United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir. 1996). The court must consider the evidence "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government, and may overturn the conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Deference to these principles "is especially important when reviewing a conviction of conspiracy .... because a conspiracy, by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir.1992) (internal quotation marks omitted).

 The evidence at trial showed that Rodriguez attended the October 23 meeting and participated in the planning of the assault, including the group's recitation of the Mortal Warrior Prayer. Tr. 176–77. In fact, at the meeting, Rodriguez specifically indicated that he was going to the beef with King Little. Tr. 184–85. As Pacheco testified, Latin Kings were ex-

pected to go to a beef in support of a fellow Latin King. Tr. 280, 284–85. Shortly after the meeting broke up, Rodriguez began to proceed to the location of the planned assault until he was arrested with Pacheco, who admitted his intention at the time was to participate in the beef. *See* Tr. 49, 69, 317–18. The jury also heard that when Rodriguez was arrested in May 1998 on the charges contained in the superseding indictment, he told the arresting agent that he had arrived at the October 23 meeting as it was breaking up. Tr. 336. The tape of the meeting, however, reveals that this statement was a lie.

Viewing this evidence in the light most favorable to the government, as the court must, it was sufficient to sustain the jury's verdict. The jury could reasonably conclude that Rodriguez intended to assault King Little and that he took a substantial step toward that crime beyond mere preparation. *See United States v. Shoulberg*, 895 F.2d 882, 885 (2d Cir.1990) (describing elements for attempt to commit a crime). Similarly, the same evidence could sensibly convince the jury that Rodriguez was guilty of conspiracy by showing that he agreed with other Latin Kings to assault King Little and he participated in the conspiracy with the intent to commit the crime. In addition, there was enough evidence for the jury to find that Rodriguez committed these acts for the purpose of maintaining his position in a racketeering activity, namely the Latin Kings.

### C. *Prosecutorial Misconduct*

 In order to set aside a conviction because of prosecutorial misconduct, a defendant must show that the prosecutor's statements "were so severe and significant as to result in the denial of the[ ] right to a fair trial." *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir.1993). In evaluating such a claim, the court considers: "(1) the severity of the alleged misconduct; (2) the curative measures taken; and (3) the likelihood of conviction absent any misconduct." *Id.* at 945–46.

**280**

Rodriguez complains about two statements made by the prosecutor. First, he says that the prosecutor characterized his counsel's venue argument as "just an attempt to get his client off on a technicality." Tr. 524. When viewed in context, however, that statement takes on a different appearance. The prosecutor said: "Mr. Siegel mentioned that there was no venue in this district. . . . If you don't recall that there were Latin King meetings in New York, in Manhattan, during the time that this crime is charged then, ladies and gentlemen, Mr. Siegel is right. But if you recall that, then that's just an attempt to get [Rodriguez] off on a technicality." Tr. 523–24. Thus, the prosecutor's argument was more an attack on Rodriguez's failure to acknowledge the evidence of venue than a belittling of the significance of establishing venue in general. Nonetheless, because the prosecutor's remark may have been improperly interpreted, the court sustained the defense objection and instructed the jury that they must acquit if any of the elements are not proved. *See* Tr. 524. In these circumstances, Rodriguez suffered only the minutest amount of prejudice, if any, and the statement could not realistically have affected the outcome of the trial.

Rodriguez's second complaint is that the prosecutor tried to place the burden to call witnesses on the defense when the prosecutor said to the jury: "But ask yourself, why it is that not a single one of the defendants called a single witness who was there at the meeting that night?" Tr. 524. This statement did not constitute prosecutorial misconduct amounting to a denial of the right to a fair trial. For one thing, a prosecutor "is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case." *United States v. Caccia,* 122 F.3d 136, 140 (2d Cir.1997) (internal quotation marks omitted) (quoting *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.1977)). Beyond that, only moments before making the challenged statement, the prosecutor made clear who had the burden of proof: "Ladies and gentlemen, the defendants, they have no burden in this case. The burden of proof in on the Government." Tr. 524. Any doubt in the jury's mind as to who had the burden of proof was put to rest when immediately after the challenged statement, the court sustained defense objections and gave a curative instruction on the burden of proof. *See* Tr. 524. In sum, neither of the two statements cited by Rodriguez, taken separately or together, provide any justification for upsetting the jury's verdict.

*Conclusion*

For the reasons set forth above, defendants' motion to set aside the jury's verdict is denied.