UNITED STATES of America, Appellee,

v.

Richard VAZZANO,
Defendant–Appellant.

No. 460, Docket 89–1331.

United States Court of Appeals,
Second Circuit.

Argued Dec. 13, 1989.

Decided June 22, 1990.

Richard A. Reeve, Asst. Federal Public Defender, New Haven, Conn. for defendant-appellant.

John H. Durham, Asst. U.S. Atty., New Haven, Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., Robert J. Devlin, Jr., Attorney, U.S. Dept. of Justice, New Haven, Conn., Michael A. Schwartz, Law Intern, of counsel), for appellee.

Before VAN GRAAFEILAND,
PIERCE and MINER, Circuit Judges.

PIERCE, Senior Circuit Judge:

Richard Vazzano appeals from a judgment of the United States District Court for the District of Connecticut (Eginton, *Judge*) convicting him, after a guilty plea, of one count of distribution of cocaine

while within 1,000 feet of a school. 21 U.S.C. §§ 841(a)(1), 845a(a). Vazzano was sentenced, *inter alia*, to 36 months imprisonment and is now serving his sentence.

On appeal, Vazzano contends that the district court erred in considering quantities of cocaine and transactions not involved in the events at issue in calculating his base offense level.

## BACKGROUND

At a meeting on October 25, 1988, Vazzano told one Bill Lepore, an informant working for the FBI, that he could supply all the cocaine Lepore wanted. When asked about the quality of the cocaine, Vazzano told Lepore that he sold "A" and "B" cocaine, which were of high quality, and that his clients were making substantial profits reselling cocaine that they bought from him.

Vazzano and Lepore met again on October 28, 1988. At this meeting, Vazzano showed Lepore a package and told him that it contained grade "C" cocaine. Vazzano told Lepore that while this cocaine was of low quality, it was "money making stuff" and that he had made approximately $6,000 that week selling it. When Lepore asked Vazzano for a sample of the cocaine, Vazzano offered to sell him an ounce for $500. Lepore responded that he did not have that much money with him, whereupon Vazzano informed him that the package contained three ounces. Vazzano declined to give Lepore either one ounce or the whole package, on credit, claiming that he was unable to weigh out an ounce and that he had a customer who was presently able to pay for the entire quantity. During the course of this conversation, Vazzano told Lepore that he had just sold nine ounces of the same quality cocaine to a customer in New Haven and that he was selling the "C" quality cocaine for $11,000 per kilogram. Vazzano provided a sample from the package for Lepore to give to a potential customer. In relevant part, this conversation occurred as follows:

Lepore: [Y]ou got a sample for me?

Vazzano: I'm telling you. How much ... you wanna buy an ounce? Buy an ounce for five hundred bucks.

Lepore: I don't have that. If I knew that, you know, geez unless you give me.

Vazzano: I got three ounces.

Lepore: Well well why don't you do this ... give me an ounce, right?

Vazzano: I don't, how the f—— am I gonna tell what an ounce is? It's all in one bag.

Lepore: What do you got, three ounces?

\* \* \* \* \* \*

Vazzano: I just sold nine to a guy [in New Haven].

Lepore: Well what, what do you got in there?

Vazzano: This is three.

Lepore: Three ounces. Now what's, what's he want for, ah what do you want for an ounce?

\* \* \* \* \* \*

Vazzano: ... Five hundred dollars an ounce.

Lepore: Alright, why don't I, why don't I take this. Alright? I'll see him tonight.

Vazzano: I got a guy right now who'll buy this from me, right now, for cash money. So I'd rather just give you [a] hunk of it. A little chunk.

On November 2, 1988, Vazzano told Lepore that he was about to receive a substantial shipment of higher quality cocaine. Vazzano agreed to sell Lepore an ounce each of the "A" and "B" qualities the following day for a total of $1,550. Lepore indicated that he would pass these samples on to a customer who was interested in setting up a kilogram level deal.

The two-ounce sale never occurred and, on November 14, 1988, Vazzano met Lepore and gave him a sample of the "B" quality cocaine which he described as being three times as good as the "C" quality. Vazzano offered to sell two kilograms of this quality cocaine for a total of $27,000. Vazzano assured Lepore that this was "very cheap" and told him that the "A" quality—which he described as being of the same purity but "cleaner" and "whiter" than the "B" quality—was available for

$17,000 to $18,000 per kilogram. During this conversation, Lepore mentioned that he had previously been "ripped off" and expressed concern that Vazzano's source might be untrustworthy. Vazzano told Lepore not to worry.

On November 15, 1988, Vazzano gave Lepore a sample of the "A" quality cocaine.

Chemical analysis revealed that the cocaine which Vazzano gave to Lepore on October 28, 1988 weighed 2.07 grams and was 45% pure; that the sample distributed on November 14, 1988 weighed 3.35 grams and was 67% pure; and that the sample distributed on November 15, 1988 weighed 2.12 grams and was 98% pure.

During a meeting on November 17, 1988, Vazzano told Lepore that he had been warned that Lepore was "wired." Five days later, Vazzano also mentioned two people who had been arrested and expressed concern that someone was "scooping [his] customers off the street." In light of these conversations, the FBI became concerned for Lepore's safety, and Vazzano was arrested on November 29, 1988. In a three-count indictment returned on December 20, 1988, Vazzano was charged with possession with the intent to distribute, and distribution of, cocaine on October 28, 1988, 21 U.S.C. § 841(a)(1), and with possession with the intent to distribute, and distribution of, cocaine while within 1,000 feet of a school on November 14 and 15, 1988, 21 U.S.C. §§ 841(a)(1), 845a(a).

On March 31, 1989, Vazzano pled guilty to the distribution charged in count two of the indictment. In its presentence report, the probation department calculated Vazzano's base offense level at 22. This figure reflected the three samples which Vazzano had distributed to Lepore and, crediting Vazzano's representations at the October 28, 1988 meeting, the nine ounces which Vazzano "just sold ... to a guy [in New Haven]" and the three ounces which Vazzano had in his possession at that meeting. Acknowledging that Vazzano "was not observed in possession of the nine ounces of cocaine he said he had sold," the probation department suggested that either a downward departure or a recomputation of the base offense level might be warranted.

Vazzano objected to the inclusion of both the nine-ounce distribution which he had discussed with Lepore and the three ounces he had claimed he possessed on October 28, 1988, and contended that he had attempted to "rip-off" Lepore by getting him to provide money in advance for nonexistent drugs. Vazzano asserted that his statements were unreliable "boasts" made in order to convince Lepore that he was capable of producing large quantities of cocaine. In addition to challenging the sufficiency of the government's proof that he actually distributed the nine ounces and possessed the three ounces, Vazzano also asserted that, in any event, the nine-ounce distribution was not "relevant" to his distributions to Lepore.

Vazzano argued that his base offense level should only reflect the quantities that he actually distributed to Lepore; this would result in a base offense level of 13. See United States Sentencing Guidelines ("Guidelines") § 2D1.3(a)(2)(B) (Jan.1988). Alternatively, conceding that the court could consider the cocaine in his possession on October 28, 1988, Vazzano argued that the package that he showed to Lepore contained no more than one ounce of the drug. When aggregated with the quantities distributed to Lepore, this would result in a base offense level of 14.

At the sentencing hearing, Judge Eginton rejected the government's argument that, in light of the negotiations involving two kilograms of cocaine, the appropriate base offense level was 28. See id. § 2D1.4, applic. note 1 (Jan.1988). Rather, relying upon Vazzano's statements to Lepore and his assessment that Vazzano was not a "low level" dealer, Judge Eginton found that the appropriate base offense level was 22.

After a two-point reduction for acceptance of responsibility, the applicable guidelines range for incarceration was 33–41 months. Judge Eginton imposed a term of imprisonment of 36 months, six years of supervised release and a $50 special assess-

ment. When defense counsel urged him to clarify his findings, Judge Eginton stated that the government had satisfied its burden of establishing the nine-ounce distribution and the three-ounce possession by a preponderance of the evidence. He explained that:

> even though I could, I think with some comfort go all the way with the government on the twenty-eight offense level, I'm a little more comfortable going with the twenty-two because I think it's more of a transactional situation. It's the one episode that seems to me to come very closely together and I certainly feel that it's an important part of the government's proof and this I think is the issue that you get right down to ... [that is] to what extent can you rely on what the defendant tells you or what the defendant says to the informant.... The over[all] common sense thing is ... I cannot picture this particular individual with his lifestyle ... as falling within the category ... of a really very low level nickle and dime distributor.

The present appeal followed.

## DISCUSSION

On appeal, Vazzano asserts that the district judge erred in including the "nine-ounce distribution" and the "three-ounce possession" in calculating his base offense level. Vazzano argues that there was insufficient evidence to establish that either the nine-ounce distribution or the three-ounce possession occurred and that the nine-ounce distribution did not constitute conduct relevant to the distributions to Lepore.

■ Section 1B1.2(a) of the guidelines directs the sentencing judge to apply the section "most applicable to the offense of conviction." In cases involving narcotics, the base offense level varies depending upon the quantity and type of narcotic involved. *See* Guidelines § 2D1.1 (Drug Quantity Table) (Oct.1987). Under § 1B1.3(a)(2), "quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same

course of conduct or part of a common scheme or plan as the count of conviction." *Id.* at § 1B1.3 (background commentary) (Jan.1988). Thus, in setting the base offense level, "a sentencing court must consider a defendant's involvement with quantities of narcotics not charged in the count(s) of conviction when such conduct was undertaken in the same course of conduct as the offense of conviction." *United States v. Schaper,* 903 F.2d 891, 893, 897–98 (2d Cir.1990); *United States v. Copeland,* 902 F.2d 1046, 1048 (2d Cir.1990).

Our early cases discussed § 1B1.3 in the context of quantities of narcotics that either were charged in a dismissed count of the indictment or were seized from the defendant or his co-conspirators. *United States v. Bedoya,* 878 F.2d 73, 75–76 (2d Cir.1989) (per curiam); *United States v. Fernandez,* 877 F.2d 1138, 1141–42 (2d Cir. 1989); *United States v. Paulino,* 873 F.2d 23, 25 (2d Cir.1989) (per curiam); *United States v. Guerrero,* 863 F.2d 245, 249–50 (2d Cir.1988). More recently, however, we have clarified that "[q]uantities of narcotics neither charged in the indictment nor physically seized are 'relevant conduct' for calculation of the base offense level if they were part of the same course of conduct as the counts leading to conviction." *Schaper,* 903 F.2d at 898–99; *accord Copeland,* 902 F.2d at 1049; *cf. United States v. Colon,* 905 F.2d 580, 586–88 (2d Cir.1990) (quantities of narcotics found to be part of the same scheme or plan as the offense of conviction must be incorporated into the base offense level rather than used as a basis for a discretionary departure). *See generally* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 513–17 (1990).

■ In deciding whether narcotics not charged in the offense of conviction should be incorporated into the base offense level, the district court must determine (1) whether conduct relating to those narcotics has been established by a preponderance of the evidence, and (2) whether that conduct was part of the same course of conduct or com-

mon scheme or plan as the offense of conviction. *See Schaper*, 903 F.2d at 898–99.

■■■ Our review is governed by 18 U.S.C. § 3742(e) which requires that we "accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." A finding that certain conduct occurred must be upheld unless it is clearly erroneous. *See Copeland*, 902 F.2d at 1049. This court, however, has yet to determine the proper standard for reviewing a district court's determination that conduct is relevant to the offense of conviction. *United States v. Candito*, 892 F.2d 182, 185 (2d Cir.1989); *accord United States v. Woolford*, 896 F.2d 99, 104 & n. 7 (5th Cir.1990).

In *United States v. Stroud*, we reviewed § 3742's legislative history and noted that "[w]hile the adoption of the 'due deference' standard of review was 'intended to give the court of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity,'" Congress envisioned that the degree of deference accorded to the district court's application of the guidelines would depend upon the degree to which the determination turns upon a factual or a legal question. 893 F.2d 504, 506–07 (2d Cir.1990). Thus, while the clearly erroneous standard is appropriate where the district court's determination resembles a finding of fact, *de novo* review is required where the application of the guidelines approaches a purely legal question. *Id.* at 507; *accord United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989) (Wilkins, J.); *United States v. Wright*, 873 F.2d 437, 443–44 (1st Cir.1989) (Breyer, J.).

We agree with the First, Sixth and Eighth Circuits that have held that a determination of whether conduct is relevant to the offense of conviction is reviewed under the clearly erroneous test. *See United States v. Gooden*, 892 F.2d 725, 728 (8th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990); *United States v. Gerante*, 891 F.2d 364, 368 (1st Cir.1989); *United States v. Mocciola*, 891 F.2d 13, 16 (1st Cir.1989); *United States v.*

*Silverman*, 889 F.2d 1531, 1539 (6th Cir. 1989). Whether narcotics which were neither charged in an indictment nor physically seized can constitute conduct relevant to the offense of conviction is a matter of legal interpretation, and thus is subject to *de novo* review. However, having answered that question in the affirmative, *see Schaper*, 903 F.2d at 898–99, the determination that one transaction is part of the same course of conduct or part of a common scheme or plan as the offense of conviction necessitates an evaluation of the facts presented to the district court. Since the requisite analysis is "essentially factual" and since "the district court's resolution of the question raises no important, widely applicable issues of law," we will review the district court's determinations for clear error. *See Wright*, 873 F.2d at 444.

■■■ While Judge Eginton did not make explicit findings regarding the nine-ounce distribution and the three-ounce possession, the transcript of the sentencing hearing, read as a whole, reveals that the district judge found that the government had satisfied its burden of proving, by a preponderance of the evidence, that the distribution and the possession had occurred and were relevant to the distributions to Lepore.

Vazzano does not dispute that, on October 28, 1988, he told Lepore that he had "just sold nine [ounces of cocaine] to a guy [in New Haven]" and that he had three ounces of cocaine in his possession. Rather, he argues that these representations were untrue and that he was "puffing" in order to convince Lepore that he was a large-scale dealer in the hopes that Lepore would provide money "up front" for nonexistent drugs. In support of his claim that these statements were untrustworthy, Vazzano notes that the probation department and the district court disregarded other statements he had made to Lepore regarding large-scale cocaine trafficking in determining his base offense level. Additionally, Vazzano claims that the failure either to search his residence or to conclude a kilogram-level deal indicates that even the government did not credit his statements. Moreover, Vazzano explains that

Lepore had previously been "ripped-off" in a similar manner and that he (Vazzano) had been motivated to steal from Lepore by the latter's attempt to sell him a debt-ridden restaurant. Vazzano further urges that his representations regarding the price and the quality of the cocaine were inconsistent and inaccurate, thus undermining the suggestion that he was a large-scale dealer. Finally, with respect to the three-ounce possession, Vazzano claims that while he did have some cocaine in his possession at the time, he inflated the quantity in response to Lepore's indication that he did not have any money and in order to build his stature as a dealer.

The guidelines recognize that statements made in the course of a narcotics transaction may not be trustworthy. *See* Guidelines § 2D1.4, applic. note 1 (Jan.1988) (in cases of incomplete attempts, the amount of narcotics under negotiation should be used to calculate base offense level except that the district court should consider a downward departure if it finds that the defendant was not reasonably capable of producing the amounts discussed); 54 Fed. Reg. 21,362 (May 17, 1989) (explaining amended § 2D1.4, applic. note 1 (effective Nov.1989) which mandates exclusion of amounts which defendant was not capable of producing since "puffing" during the course of negotiations could result in inflated offense levels). While the district judge was free to reject Vazzano's statements as untrustworthy, in light of the transactions and the various conversations between Vazzano and Lepore, he was not bound to do so. We cannot say that the district judge committed clear error in finding, for purposes of calculating Vazzano's base offense level, that it was more likely than not that his statements accurately reflected his conduct.

Finally, the nine-ounce distribution described by Vazzano occurred during the same three-week period as the distributions to Lepore. This temporal relationship, together with the fact that the *same quality* of cocaine was involved in one of the distributions to Lepore, provides adequate support for the district judge's determination that these transactions were part of the same course of conduct or part of a common scheme or plan.

## CONCLUSION

We have considered appellant's remaining arguments and believe that they are without merit. The judgment of the district court is affirmed.