UNITED STATES of America, Appellee,

v.

**Eric AGRAMONTE, Defendant–Appellant.**

**No. 194, Docket 91–1480.**

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1992.

Decided Nov. 24, 1992.

Lloyd Epstein, New York City (Epstein, Hus & Weil, of counsel), for defendant-appellant.

Paul D. Silver, Asst. U.S. Atty. N.D.N.Y., Albany, N.Y. (Gary L. Sharpe, U.S. Atty. of counsel), for appellee.

Before: MINER, ALTIMARI and WALKER, Circuit Judges.

## PER CURIAM:

Defendant-appellant Eric Agramonte appeals from a judgment of conviction and sentence entered on July 31, 1991 in the United States District Court for the Northern District of New York (Gagliardi, *J.*) imposing a term of imprisonment of forty-six months, supervised release for a term of thirty-six months and a special assessment of fifty dollars following his conviction for conspiracy to possess marijuana with the intent to distribute it, in violation of 21 U.S.C. § 846. Agramonte contends that the district court erred in calculating his base offense level by taking into account twenty-five pounds of marijuana that were not the subject of any agreement or negotiation, in denying him a two-level reduction because of his minor role in the conspiracy, and by dismissing a sworn juror for presumed bias without making any inquiry of the juror.

## BACKGROUND

John Lubrant, a Capital District Drug Enforcement Task Force agent, while acting in an undercover capacity, offered to sell large quantities of marijuana to Eric Agramonte. Agramonte could not afford to make the necessary payment and asked Lubrant to "front" (advance upon a promise of future payment) him twenty-five pounds of marijuana. Agramonte planned to resell the "fronted" drugs and use a portion of the proceeds to repay Lubrant. Lubrant refused to provide the drugs, saying that he was only interested in transactions involving larger quantities. Agramonte thereafter arranged a meeting in mid-September 1990 between Lubrant and Peter Splain, a co-worker of Agramonte, to negotiate a large-quantity transaction. However, Agramonte continued to press Lubrant to "front" him the twenty-five pounds he originally sought.

At the meeting arranged by Agramonte, Lubrant showed Splain one hundred pounds of marijuana and offered to sell it for $1,000 per pound. Splain did not have sufficient funds to finance the transaction, but told Lubrant he would find someone who did. After several attempts, Splain and another man, Douglas Soucy, contacted James Jock, who agreed to purchase fifty pounds of marijuana for $75,000. Lubrant agreed to the transaction, and arrangements were made for the exchange to take place on October 1, 1990. When they arrived at the designated location to complete the transaction, Splain, Soucy and Jock were arrested. Agramonte was apprehended shortly thereafter.

Agramonte was tried on a two-count indictment charging attempt to possess marijuana with the intent to distribute it, in violation of 21 U.S.C. § 846, as well as the conspiracy count upon which he was convicted. At trial, the prosecution advised Judge Gagliardi that Juror No. 11 had conversed with defense counsel prior to voir dire and that Juror No. 11's husband was the gynecologist for defense counsel's wife. The district judge excused Juror No. 11 without any further inquiry and replaced her with an alternate juror.

In computing Agramonte's sentence, the district court attributed to Agramonte the fifty pounds of marijuana that was the subject of negotiation in the transaction involving Splain, Soucy, Jock and Lubrant, the twenty-five pounds Agramonte requested that Lubrant "front" him and two ounces of cocaine that Agramonte separately negotiated to sell to Lubrant.

On appeal, Agramonte contends that the district court erred in calculating the base offense level by including the twenty-five pounds of marijuana he sought but never received; challenges, on the basis of his minor role in the conspiracy, the denial of a reduction in his offense level, contending that his minor role in the conspiracy entitled him to a reduction; and asserts that the district court erred in dismissing Juror No. 11 without an inquiry.

## DISCUSSION

█ Sentencing Guideline section 1B1.3 instructs the sentencing court to consider, in calculating the base offense level and making adjustments, various categories of "relevant conduct," including "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction," U.S.S.G. § 1B1.3(a)(1), as well as "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2).[1] *See United States v. Perdomo*, 927 F.2d 111, 114 (2d Cir.1991); *United States v. Vazzano*, 906 F.2d 879, 882 (2d Cir.1990). In the case of a drug transaction, the goal is to base a defendant's punishment on quantities of narcotics that, although not actually delivered, were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2), application note 2; *see Perdomo*, 927 F.2d at 114–15.

In *United States v. Santiago*, 906 F.2d 867 (2d Cir.1990), we reasoned that the "same course of conduct" concept focuses

on whether the defendant has engaged in an identifiable "behavior pattern," *id.* at 872, of specific criminal activity. Based upon the facts before us, it was not clearly erroneous for the district court to view Agramonte's activities as a pattern of criminal behavior. Agramonte first requested that Lubrant "front" him the marijuana on August 9, 1990. Agramonte subsequently contacted Lubrant on September 18, 1990, stating that he had a buyer who wished to purchase a large quantity of marijuana. One week later, on September 25, Agramonte arranged a meeting between Lubrant and Splain, and again requested that Lubrant "front" him the drugs. Thus, the district court properly concluded that Agramonte had engaged in the "same course of conduct" for section 1B1.3(a)(2) inclusion purposes.

In a case not involving "fronted" drugs, we held that a district court may include as relevant conduct transactions involving quantities of narcotics that were not negotiated as part of the transaction for which the defendant was convicted. *See United States v. Burnett*, 968 F.2d 278, 280 (2d Cir.1992) (separate purchase of cocaine considered "relevant conduct" in determining base offense level in sentencing for possession of marijuana with intent to distribute); *see also Vazzano*, 906 F.2d at 882 (separate sale of cocaine considered "relevant conduct" for purposes of determining base offense level). That Agramonte wished to purchase the drugs on consignment does not change the fact that his requests were part of the same course of conduct as the conduct involving the conspiracy for which he was convicted. Therefore, the district court properly included the twenty-five pounds of marijuana in determining Agramonte's base offense level.

Agramonte argues that he was unable to purchase the narcotics and that Lubrant had no intention of "fronting" them. We need not reach the question of whether Lubrant intended to "front" Agramonte the drugs. The facts of this case are sufficient to establish that Agramonte had the

---

1. This case is decided under the 1991 Sentencing Guidelines in effect at the time of defendant-

appellant's sentencing. 18 U.S.C. § 3553(a) (1988).

intent and the ability to distribute the drugs. Agramonte requested that Lubrant "front" him the drugs on two separate occasions. Given Agramonte's extensive knowledge of drug dealers and the drug trade, it is evident that if he had received the requested drugs, he would have been able to sell them and repay Lubrant. Indeed, Agramonte assured Lubrant that he would repay him within a few days. Moreover, because Lubrant showed Agramonte and Splain the one hundred pounds of marijuana, Agramonte had reason to believe that Lubrant had the ability to produce the drugs. Accordingly, we find that Agramonte's requests to "front" the drugs properly were considered "relevant conduct" under the provisions of the Guidelines, *see* U.S.S.G. § 1B1.3.

■ Agramonte also contends that he was entitled to a two-level reduction in his adjusted offense level based upon his minor role in the conspiracy. Agramonte, however, never challenged the finding in the presentence report that he was not entitled to an offense reduction. He did not raise the issue at the sentencing hearing, and in fact stated to the district court that his only objection to the presentence report was its inclusion of the twenty-five pounds of marijuana as an amount under negotiation. By failing to raise this issue, Agramonte waived any right to have it resolved by the district court. *United States v. Caba*, 955 F.2d 182, 187 (2d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992).

■ Agramonte also asserts that the district court committed reversible error by failing to hold an inquiry before dismissing Juror No. 11. Under Fed.R.Crim.P. 24(c), district courts have broad discretion to replace jurors at any time before the jury retires for deliberations. Such a decision will be upheld unless the defendant shows bias or prejudice. *United States v. Gambino*, 951 F.2d 498, 502–03 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992). Agramonte makes no assertions that he suffered bias or prejudice, and does not claim that the alternate juror who completed the trial was not im-

partial. We therefore reject this argument.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court in all respects.