Jose **GORDILS** and Nicholas **Mpounas, Petitioners,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 96 Civ. 2664 (DNE), 96 Civ. 1747 (DNE).**

United States District Court, S.D. New York.

Oct. 23, 1996.

The Legal Aid Society, New York City (Edward S. Zas, of counsel), for petitioner Jose Gordils.

Charles T. Theofan, Mineola, for petitioner Nicholas Mpounas.

Mary Jo White, United States Attorney (Alexandra Rebay, Assistant United States Attorney, of counsel), for respondent.

## OPINION & ORDER

EDELSTEIN, District Judge:

This matter is before this Court on the petitions of Jose Gordils ("Gordils") and Nicholas Mpounas (Mpounas") ("petitioners") pursuant to Title 28, United States Code, Section 2255 ("Section 2255" or the "habeas corpus statute") to vacate their convictions under Title 18, United States Code, Section 924(c) ("Section 924(c)") in the wake of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d· 472 (1995). This Court previously vacated petitioners' Section 924(c) sentences and found that they should be resentenced on their remaining convictions, but reserved decision on the issue of whether to enhance petitioners' offense levels under United States Sentencing Guidelines Section 2D1.1(b)(1) ("Guidelines Section 2D1.1(b)(1)") for possession of a firearm in connection with a drug trafficking offense. This Court ruled on this issue during a hearing held on October 21, 1996, and the instant opinion memorializes its ruling.

### I. BACKGROUND

A full recitation of the facts underlying petitioners' sentences is set forth in *United States v. Gordils,* 982 F.2d 64, 66–69 (2d Cir.1992), *cert. denied,* 507 U.S. 1054, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993), and familiarity with them is assumed. Nevertheless, the subject matter of the instant petition necessitates an abbreviated review of the events leading to petitioners' arrests and convictions.

This case originally involved four defendants. In addition to petitioners, also charged as co-defendants were Francisco Bastar ("Bastar") and Gregory Melendez ("Melendez"). (Government's Memorandum of Law in Opposition to *Pro Se* Petitions of Nicholas Mpounas and Jose Gordils Pursuant to 28 U.S.C. § 2255, *Gordils and Mpounas v. United States,* 96 Civ. 3664 and 96 Civ. 1747 ("Government's Opp. Memo") at 4 (July 12, 1996).) Neither Bastar nor Melendez is a party to the instant resentencing.

In early May 1989, Luis Hernandez ("Hernandez"), a confidential informant working for the Drug Enforcement Agency ("DEA"), offered to pay Bastar a commission if Bastar arranged for Hernandez to purchase two kilograms of cocaine. *Gordils*, 982 F.2d at 67. Bastar agreed and arranged for Hernandez to meet with a dealer, later identified as Gordils. *Id.* On May 10, 1989, Bastar drove Hernandez to 636 East 224th Street, Apartment 1A, in the Bronx (the "apartment"), where Bastar introduced Hernandez to Gordils and Mpounas. *Id.* Gordils informed Hernandez that firearms were kept in the apartment "only for protection." *Id.* At that meeting a price of $16,200 per kilogram of cocaine was negotiated and agreed upon by Gordils and Hernandez. *Id.*

On May 15, 1989, Gordils and Hernandez travelled to 97th Street and Riverside Drive in Manhattan, a location previously agreed upon, to consummate their transaction. *Id.* Gordils instructed Bastar to remain in the apartment and not to admit anyone except Mpounas, Melendez, or another individual named "Piki." *Id.* When Gordils and Hernandez arrived at 97th Street and Riverside Drive, DEA agents arrested Gordils and seized two kilograms of cocaine from the floor of his car. *Id.* Gordils informed the DEA that, among other things, Bastar, Mpounas, and "Piki" were awaiting his return with the proceeds from the drug sale at the apartment. *Id.* at 67–68.

The DEA decided to secure the apartment to prevent the flight of suspects and the removal or destruction of evidence. *Id.* at 68. The agents proceeded to the vicinity of the apartment and found Mpounas stationed at the corner of 224th Street and White Plains Road, looking up and down the street. (Government's Opp. Memo at 9.) They arrested Mpounas and seized approximately 123 grams of heroin, a beeper, and handwritten records of narcotics transactions with various individuals, including Gordils. *Id.* at 9–10. The agents went to the door of the apartment, announced in both English and Spanish: "Police, open up." *Gordils*, 982 F.2d at 68. No one opened the door, and when one of the agents heard shuffling noises inside, the agents broke the door down with a battering ram. *Id.*

The agents arrested Bastar who was sitting in a chair in the living room. *Id.* Lying on the floor near the chair was a fully operable .9 millimeter semi-automatic pistol ready to fire: it was loaded, its safety was off, and it had a live round in its chamber. *Id.*; (Government's Opp.Memo at 10). From elsewhere in the apartment, the agents seized a fully operable .22 caliber Winchester semi-automatic rifle, heroin, approximately one kilogram of cocaine, drug records and paraphernalia, and approximately $9,000 in cash. (Government's Opp.Memo at 10.)

Gordils and Mpounas were both charged in a five count superseding indictment. Count One charged petitioners with conspiracy to distribute cocaine in violation of Title 21, United States Code, Section 846. Count Two charged petitioners with possessing with intent to distribute cocaine in violation of Title 21, United States Code, Section 841(b)(1)(B). Count Three charged petitioners with possessing with intent to distribute heroin in violation of Title 21, United States Code, Section 841(b)(1)(C). Count Four charged Mr. Mpounas alone with possessing with intent to distribute heroin in violation of Title 21, United States Code, Section 841(b)(1)(B). Count Five charged petitioners with using and carrying firearms during and in relation to drug trafficking crimes in violation of Section 924(c).

Following a jury trial, both petitioners were found guilty on all counts with which they were charged on December 8, 1989. On April 24, 1990, this Court sentenced Gordils to three concurrent 151–month terms on Counts One through Three. On that same day, this Court sentenced Mpounas to four concurrent 188–month terms on Counts One through Four. On Count Five, this Court also imposed on both Gordils and Mpounas a mandatory consecutive sentence of five years to be served after each of their concurrent terms expires. In addition, this Court ordered that a five year period of supervised release follow each of petitioners' terms of incarceration with several special conditions. This Court further required Mpounas to pay a fine of $17,500 over the term of his super-

vised release. Finally, this Court imposed mandatory special assessments of $250 on Mpounas and $200 on Gordils.

On January 30, 1991, this Court denied petitioners' respective motions for retrial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Petitioners appealed their respective convictions and this Court's denial of their respective motions for a new trial. The Second Circuit affirmed this Court's rulings in all respects in *United States v. Gordils,* 982 F.2d 64 (2d Cir.1992), *cert. denied,* 507 U.S. 1054, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993).

■ Pursuant to Section 2255, this year both petitioners filed petitions for habeas corpus to vacate their Count Five convictions and sentences under Section 924(c) in light of the United States Supreme Court's decision in *Bailey v. United States,* — U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), as well as several other grounds. In *Bailey,* the Supreme Court limited the scope of the term "use" in Section 924(c), which criminalizes the "use" of a firearm in a narcotics offense. The Court held that Section 924(c) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use which makes the firearm an operative factor in relation to the predicate offense." — U.S. at ——, 116 S.Ct. at 505, 133 L.Ed.2d 472. "Active employment," the Court elaborated, "certainly includes brandishing, displaying, bartering, striking, and, of course, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. *Bailey* thus represents a substantial departure from the Second Circuit's firmly established holdings that active use was not required to sustain a conviction under Section 924(c). *See, e.g., United States v. Fermin,* 32 F.3d 674, 678 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1145, 130 L.Ed.2d 1104 (1995); *United States v. Medina,* 944 F.2d 60, 66–67 (2d Cir.1991), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992); *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.), *cert. denied,* 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989). The Government conceded that, in light of *Bailey,* petitioners' respective Section 924(c) convictions should

be vacated. (Government's Opp. Memo at 16–27.)

In separate Orders dated July 16, 1996, this Court vacated each petitioner's conviction under Section 924(c), pursuant to *Bailey.* In those Orders, this Court also found that petitioners should be resentenced on the remaining counts on which they were convicted and that this Court should consider whether to enhance petitioners' offense levels under Guidelines Section 2D1.1(b)(1) for possession of a firearm in connection with a drug trafficking offense.

## II. DISCUSSION

Before this Court resentenced petitioners, it resolved two issues: (1) whether petitioners' offense level could be enhanced under Section 2D1.1(b)(1) of the Sentencing Guidelines; and (2) whether Mpounas could challenge his Criminal History Category, which this Court calculated at his original sentencing in 1990.

### A. Two Level Enhancement

■ The Government requested that petitioners be resentenced on their narcotics convictions, and seeks to add two levels to each of their total offense levels pursuant to Guidelines Section 2D1.1(b)(1). Guidelines Section 2D1.1(b)(1) mandates that a two level enhancement be imposed "[i]f a dangerous weapon (including a firearm) was *possessed* " during a drug offense. U.S.S.G. § 2D1.1(b)(1) (emphasis added). The two level enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 Application Note 3. "The defendant need not have had personal possession, or even actual knowledge of the weapon's presence; the enhancement is required so long as the possession of the firearm was reasonably foreseeable to the defendant." *United States v. Stevens,* 985 F.2d 1175, 1188 (2d Cir.1993) (internal quotations omitted).

Under the terms of the Sentencing Guidelines, however, the two level enhancement was unavailable to the Government at the time of petitioners' original sentencing.

When a defendant is convicted and sentenced for "use" of a firearm in violation of Section 924(c), the Sentencing Guidelines' ban on "double counting" prohibits courts from also enhancing that defendant's sentence under Guidelines Section 2D1.1(b)(1) for "possession" of a firearm. *See* U.S.S.G. § 2K2.4, Application Note 2; *United States v. Howard*, 998 F.2d 42, 48 (2d Cir.1993). The evidence at trial established that these petitioners "possessed" firearms during their crimes. However, because petitioners were convicted and sentenced for their Section 924(c) violations, this Court did not enhance their sentences under Guidelines Section 2D1.1(b)(1).

In their submissions to this Court, petitioners do not contest that they "possessed" firearms during the commission of their narcotics offenses. However, now that their Section 924(c) convictions no longer pose "double counting" obstacles, petitioners do dispute this Court's authority on resentencing to add a two level enhancement to their sentences under Guidelines Section 2D1.1(b)(1). In support of their position, petitioners rely upon Title 18, United States Code, Section 3582(c)(1)(B), which provides that "[t]he court may not modify a term of imprisonment once it has been imposed except that[,] in any case[,] the court may modify an imposed term of imprisonment to the extent otherwise permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." (Letter from Edward S. Zas, Esq., to the Hon. David N. Edelstein, United States District Judge for the Southern District of New York, *Gordils and Mpounas v. United States*, 96 Civ. 3664 and 96 Civ. 1747 ("Zas Letter") at 2 (Oct. 2, 1996).) Petitioners contend that, because Fed.R.Crim.P. 35 is inapplicable to this case, Section 2255 is the only other statute which might confer jurisdiction upon this Court to modify petitioners' sentences. *Id.* Petitioners then argue that Section 2255 does not confer such jurisdiction in the case at bar.

Petitioners' argument rests almost entirely upon their construction of Section 2255, which reads, in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

\* \* \* \* \* \*

... If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255.

Based on this text, petitioners essentially raise two affirmative arguments. First, they contend that the "plain language of § 2255 allows only a 'prisoner in custody' to petition the Court ... for modification of a sentence." (Zas Letter at 3.) Accordingly, petitioners reason, only a "prisoner in custody"—not the Government—may seek to modify his sentence after it is vacated on habeas corpus. *Id.* Second, petitioners claim that their "§ 2255 challenge to [their] § 924(c) conviction[s] and sentence[s] does not bring all of [their] other sentences before this Court. On a § 2255 petition, only a specific sentence on a specific count is before the district court." *Id.* (quotation omitted).

The Government counters petitioners' arguments on several grounds. First, the Government asserts that petitioners' argument that this court's "jurisdiction under § 2255 has somehow been limited by the subsequent passage of 18 U.S.C. § 3582(c)" is meritless because nothing in its text or legislative history suggests that, in enacting § 3582(c), Congress intended to limit district courts' jurisdiction under § 2255. (Government's Memorandum of Law in Response to the

Resentencing Submissions of Nicholas Mpounas and Jose Gordils Pursuant to 28 U.S.C. § 2255, *Gordils and Mpounas v. United States*, 96 Civ. 3664 and 96 Civ. 1747 ("Government's Response Memo") at 4–5 (Oct. 8, 1996).) Second, the Government argues that, "once a defendant moves to vacate or correct his sentence [under § 2255], the court is permitted to grant relief and to 'correct the sentence as may appear appropriate.'" *Id.* (citations omitted). Third, the Government argues that the rationale underlying the Second Circuit's cases allowing the imposition of a two level enhancement on resentencing after direct appeal is wholly applicable to the instant case, where resentencing takes place after a successful habeas corpus petition. *Id.* at 5–7. Fourth, the Government asserts that, under prevailing Second Circuit case law, petitioners' multicount sentences were imposed as an interrelated "package," and that vacatur of one sentence, without reconsideration of the remaining sentences, undermines the validity of the entire "sentencing package." *Id.* at 7–12.

█ Narrowly defined, the dispositive issue is whether, after a successful habeas corpus petition to vacate a Section 924(c) sentence pursuant to *Bailey*, a resentencing court possesses jurisdiction to add a two level enhancement prescribed by Guidelines Section 2D1.1(b)(1). The Court notes that the issue before it appears to be a novel question of law, and one which did not exist until very recently, after prisoners successfully sought habeas corpus relief in the wake of *Bailey*. This Court's research indicates that relatively few district courts have confronted this question, and that their decisions have been inconsistent. *Compare United States v. Rowland*, No. 93–979–01, 1996 WL 524090, at *2 (E.D.Pa. Sept. 16 1996) (finding jurisdiction); *Mayes v. United States*, 937 F.Supp. 659, 659–61 (E.D.Mich.1996) (same); *Thayer v. United States*, 937 F.Supp. 662, 664–65 (E.D.Mich.1996) (same); *United States v. Davis*, No. Civ. 96–2540, 1996 WL 466940, at *3 (E.D.Pa. Aug. 13, 1996) (same); *Woodhouse v. United States*, 934 F.Supp. 1008, 1011–12 (C.D.Ill.1996) (same); *United States v. Tolson*, 935 F.Supp. 17, 20–21 (D.D.C.1996) (same); *United States v. Aespuro*, 938 F.Supp. 623, 625–26 (E.D.Cal.1996) (same);

*Merritt v. United States*, 930 F.Supp. 1109, 1112–14 (E.D.N.C.1996) (same); *Mixon v. United States*, 926 F.Supp. 178, 180–82 (S.D.Ala.1996) (same); *Pedretti v. United States*, No. 3:96–CV–0146, 1996 WL 340769, at *2 (N.D.N.Y. Apr. 26, 1996) (same); *with United States v. Forrest*, 934 F.Supp. 731, 735–36 (E.D.Va.1996) (finding no jurisdiction); *Rodriguez v. United States*, 933 F.Supp. 279, 283–84 (S.D.N.Y.1996) (same); *Dossett v. United States*, 931 F.Supp. 686, 687–88 (D.S.D.1996) (same); *Warner v. United States*, 926 F.Supp. 1387, 1391–98 (E.D.Ark.1996) (same); *Gardiner v. United States*, Civil No. 4–96–251, 1996 WL 224798, at *1 (D.Minn. May 3, 1996) (same). In this district alone, two judges have respectfully differed on this issue. *Compare Rodriguez v. United States*, 933 F.Supp. 279, 283–84 (S.D.N.Y.1996) (Kram, J.) (finding no jurisdiction) *with United States v. Bautista*, Hearing of Oct. 9, 1996, 92 Cr. 0069 and 92 Cr. 183 (Mukasey, J.) (finding jurisdiction). Further complicating matters is the absence of Circuit Court precedent to guide us. That circumstance, however, is certain to change shortly, as the Government has filed a Notice of Appeal in *Rodriguez*. (Government's Response Memo at 12 n. *.) Nevertheless, despite the apparently confused state of the law on this issue, this Court finds it appropriate to add a two level enhancement to petitioners' respective sentencing levels.

When a judge imposes a sentence for a multi-count conviction, he does so as a "package," not as independent sentences on each count. The First Circuit articulated the most cogent explanation of the "sentencing package" principle when it reasoned that

when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When a conviction on one or more counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure

that the punishment still fits both crime and criminal.

*United States v. Pimienta–Redondo,* 874 F.2d 9, 14 (1st Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989).

■] The Second Circuit has declined to adopt an absolute rule permitting district judges to reconsider entire multicount sentencing "packages" in every case in which one count is invalidated. *See United States v. Pisani,* 787 F.2d 71, 73 (2d Cir.1986). However, the Second Circuit has held that, in certain circumstances, a sentencing judge may "increase a sentence on a specific count where the original sentence was imposed as part of a 'package' that included a mandatory consecutive sentence which was subsequently found to be invalid." *United States v. Gelb,* 944 F.2d 52, 59 (2d Cir.1991); *see also McClain v. United States,* 676 F.2d 915, 917 (2d Cir.), *cert. denied,* 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982).

In a pre-Sentencing Guidelines opinion, the Second Circuit articulated its interpretation of the "sentencing package" principle, as applied to Section 924(c) vacaturs and resentencings. In *Pisani,* the Second Circuit reasoned that, where a sentencing judge feels bound by Section 924(c) to impose a mandatory consecutive sentence, the judge's sentence on other counts is impacted by his knowledge that the defendant will also have a mandatory sentence imposed under Section 924(c). 787 F.2d at 73; *see also United States v. Diaz,* 778 F.2d 86 (2d Cir.1985). Since the enactment of the Sentencing Guidelines, district courts in Second Circuit continue to "impose one sentence as the total punishment" for multi-count convictions. *United States v. Santopietro,* 996 F.2d 17, 20 (2d Cir.1993), *cert. denied,* 510 U.S. 1092, 114 S.Ct. 921, 922, 127 L.Ed.2d 215 (1994). Therefore, when a mandatory consecutive sentence which formed one component of a multicount sentence is invalidated, the entire sentencing package is necessarily affected.

Accordingly, when vacating Section 924(c) sentences under *Bailey* on direct appeal, the Second Circuit has permitted district courts to resentence defendants on their remaining convictions, including imposing a two level enhancement under Sentencing Guidelines Section 2D1.1(b)(1). *See, e.g., United States v. Bermudez,* 82 F.3d 548, 550 (2d Cir.1996); *United States v. Hernandez,* 85 F.3d 1023, 1032 (2d Cir.1996). Indeed, in *Hernandez,* the Second Circuit stated that "[i]t is clear that such a remand for resentencing is appropriate when a Section 924 conviction is reversed in light of *Bailey.*" 85 F.3d at 1032.

As petitioners correctly point out, *Bermudez* and *Hernandez* involved challenges to Section 924(c) convictions on direct appeal, rather than on habeas corpus under Section 2255. (Zas Letter at 1–4.) However, this distinction appears to be one without a difference. Nothing in the Second Circuit's case law suggests that its "sentencing package" reasoning, as applied to vacatur of a Section 924(c) sentence and two level enhancement under Section 2D1.1(b)(1), would be different if considered on a habeas corpus petition. The rationale is identical: where a sentencing judge imposed a multicount sentence aware that a mandatory consecutive sentence is to be tacked on to it and the mandatory sentence is later stricken, the judge is entitled to reconsider the sentence imposed on the remaining counts. Only in this fashion can the resentence accurately reflect the judge's original intent regarding the appropriate punishment for a defendant convicted of multiple offenses.

Indeed, it makes little sense to reason otherwise. The law cannot rationally subject prisoners who directly appeal their Section 924(c) sentences to the two level enhancement under Guidelines Section 2D1.1(b)(1) while exempting from Guidelines Section 2D1.1(b)(1) those who challenge their Section 924(c) sentences via habeas corpus. To do so would be to treat habeas petitioners as if they never possessed a firearm in the commission of their narcotics offenses.

■ In addition, petitioners argue that, because Section 2255 authorizes only "prisoners in custody" to challenge the lawfulness of their sentences, once a prisoner successfully challenges one sentence of a multicount conviction, Section 2255 restricts a court's ability to consider the Government's input on resentencing on the remaining counts. Petitioners' argument, however, misreads Section

2255. Section 2255's first paragraph grants courts the power to "vacate, set aside or *correct*" a sentence upon a prisoner's motion. 28 U.S.C. § 2255 (emphasis added). In even more explicit language, Section 2255's third paragraph states that, where a sentence is unlawful, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial *or correct the sentence as may appear appropriate.*" *Id.* (emphasis added). Once a prisoner succeeds on a Section 2255 motion, nothing in Section 2255 restricts a court's power—or the parties from which it can hear—in determining the "correct" or "appropriate" sentence. Accordingly, when resentencing after a successful habeas corpus petition, if a court is precluded from reconsidering multicount sentences as a package, it would be placed in the untenable position of vacating one part of a sentence but unable to modify the remaining portion of the sentence which is plainly "incorrect" and "inappropriate" because it no longer reflects the gravity of the prisoner's actions. That the Government may have suggested reconsidering the remaining sentences as a package does not alter a court's finding that it is proper to do so to achieve an "appropriate" and "correct" sentence. Petitioners' argument to the contrary simply finds no basis in the text of Section 2255.

Moreover, the Sentencing Guidelines clearly mandate the imposition of a two level enhancement in cases such as that at bar. At the time this Court originally imposed sentence on petitioners, Guidelines Section 2D1.1(b)(1) required a two level enhancement for possession of a weapon during or in relation to drug trafficking. This Court did not impose the two level enhancement, however, to avoid "double counting." Now that petitioners' Section 924(c) convictions have been vacated, "double counting" poses no bar to this Court's adherence to the Guidelines' terms. If this Court now refuses to impose the two level enhancement, this Court will violate the terms of the Sentencing Guidelines.

■] Here, petitioners' sentences were clearly part of a "package." First, when this Court determined petitioners' narcotics trafficking sentences, it did so with the knowledge that each of their sentences was to be followed by a mandatory consecutive five year term under Section 924(c). In Gordils' case, this Court determined that his offenses warranted a 151–month sentence for drug trafficking *plus* another five years (or 60 months) for using or carrying a firearm in connection with his crimes, for a 211–month sentence package. In Mpounas's case, this Court determined that a 188–month sentence for drug trafficking *plus* 5 years (or 60 months) for using or carrying a firearm in connection with his crimes, for a 248–month sentence package, was an appropriate punishment for his crimes. Now that petitioners' respective five year mandatory consecutive sentences are vacated, petitioners' remaining sentences—without enhancement under the Guidelines—no longer reflect the gravity of their conduct.

Second, petitioners' original sentences were "packages" because their Section 924(c) convictions prevented this Court from imposing the two level enhancement that otherwise would have been applied for possession of a firearm. Put another way, this Court's choice of sentences for petitioners' drug offenses was dependent on petitioners' Section 924(c) convictions. Once the Section 924(c) conviction was invalidated, petitioners' entire sentences were undermined. Had the two level enhancement been added to their respective original sentences in lieu of the Section 924(c) mandatory sentence, this Court would have had the ability to sentence petitioners for a longer term for their drug crimes than it did.

As a result, this Court finds that petitioners are subject to the two level enhancement of Section 2D1.1(b)(1) of the United States Sentencing Guidelines.

### B. *Mpounas' Criminal History Challenge*

Mpounas challenges the Sentencing Guidelines Criminal History Category which this Court calculated for his original sentencing over six years ago. He contends that his 1985 conviction for attempted criminal possession of a weapon for which he received a conditional discharge was subsequently dismissed. He argues that this Court therefore

improperly added one criminal history point in his Criminal History Category calculation. This Court rejects these challenges because it finds that Mr. Mpounas' argument is procedurally and substantively barred.

■ Mpounas' claim is procedurally barred by his failure to raise it at the appropriate time. Although he had two separate opportunities to do so, Mpounas never raised this claim prior to including it in his petition for habeas corpus. His first opportunity to challenge the calculation of his criminal history points was at his sentencing over six years ago. He did not, however, raise this objection at that time. This failure, in itself, constitutes a waiver of any right to have the issue resolved by the district court. *United States v. Agramonte*, 980 F.2d 847, 850 (2d Cir.1992). Mpounas' second opportunity to challenge the calculation of his criminal history points was on his appeal to the Second Circuit approximately three years ago. Once again, he failed to do so.

Mpounas finally challenged the calculation of his criminal history points in his habeas corpus petition to this Court. After the government argued that this claim was procedurally barred, however, Mpounas, acting *pro se*, sought to withdraw his claim in a submission to this Court dated July 22, 1996. Following the July 22, 1996, submission, Mpounas apparently obtained counsel. Mpounas' attorney wrote to this Court on October 3, 1996, raising this issue once again.

Putting aside questions regarding whether an attorney may re-assert a claim which his client previously had withdrawn while acting *pro se*, this Court finds that Mpounas' challenge to the calculation of his criminal history via habeas petition is barred by his failure to raise this claim on direct appeal.

■ It is well settled that habeas corpus is not a substitute for direct appeal. *Marone v. United States*, 10 F.3d 65, 67 (2d Cir.1993). Moreover, a "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992). "Cause" under this standard, has been construed by the United States Supreme Court to mean "something external to the petitioner [which] cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). In addition, attorney error does not constitute valid cause. *Id.* at 752–53, 111 S.Ct. at 2566–67.

Mpounas has failed to meet this standard in the instant case. He did not raise his criminal history category calculation claim on direct appeal, and he offers this Court no explanation for his failure previously to do so. Accordingly, this Court finds that this claim is procedurally barred.

■ Furthermore, the substance of this claim is improper for a habeas corpus petition. The Supreme Court has made clear that a habeas corpus petition is not a vehicle to review every aspect of a criminal case, but instead, provides a remedy only for defects that are constitutional, jurisdictional, or in some other respect fundamental. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). Non-constitutional errors of law, including sentencing errors, "do[ ] not provide a basis for collateral attack unless the claimed error constitute[s] a fundamental miscarriage of justice." *Id.* at 185, 99 S.Ct. at 2240. Under this stringent standard, the Second Circuit has ruled that sentencing errors generally are not cognizable on habeas corpus. *Femia v. United States*, 47 F.3d 519, 525 (2d Cir. 1995). Accordingly, this Court finds that Mpounas' claim that his criminal history was erroneously computed is not cognizable on habeas corpus.

## III. RESENTENCING

Having determined that petitioners are subject to a two level enhancement under Guidelines Section 2D1.1(b)(1) and that Mpounas may not challenge his Criminal History Category through his habeas corpus petition, this Court must now resentence petitioners pursuant to Section 2255.

### A. Gordils' Resentence

IT IS ADJUDGED that on Counts One, Two, and Three that petitioner Jose Gordils is hereby committed to the Bureau of Prisons

for a term of imprisonment of 188 months, minus time served for these convictions.

 This sentence is at the high end of the Sentencing Guidelines range which, with the two level enhancement now applicable to Gordils, is 151 to 188 months. For the same reasons articulated at Gordils' original sentencing, this Court finds that such a sentence is warranted. At his original sentencing this Court found that Gordils was a negotiator and supervisor of the drug transactions and that he arranged for the sale of a significant quantity of cocaine and conducted extensive negotiations in furtherance of the transaction. The Court notes, however, that while this sentence is the harshest available, it is less than the 211–month sentence originally imposed by this Court prior to vacatur of Gordils' Section 924(c) sentence.

Upon serving this term of imprisonment, Gordils shall be placed on supervised release for a period of five years with the same special conditions as specified at his original sentencing, to wit:

1. That Gordils not commit any crimes, federal, state or local;

2. That the Gordils abide by the standard conditions of supervised release recommended by the Sentencing Commission;

3. That the Gordils participate, if deemed necessary, in a program approved by the probation office for drug abuse, which program may include testing once every sixty days to determine whether petitioner has reverted to the use of drugs;

4. That the Gordils be prohibited from possessing a firearm or other dangerous weapon.

In addition, Gordils' original sentence imposed mandatory assessments of $50 for each of the four counts on which he was convicted, for a total of $200. However, this assessment included $50 for the now-vacated Section 924(c) conviction. Accordingly, Gordils' fine is reduced by $50, to a total of $150. To the extent that he has failed to pay an assessment of $150, if at all, IT IS THUS ORDERED that he does so. To the extent that he has paid over $150 in mandatory assessments, if at all, IT IS FURTHER ORDERED that any amount over $150 be returned to him.

### B. Mpounas' Resentence

IT IS ADJUDGED that on Counts One, Two, Three and Four that petitioner Nicholas Mpounas is hereby committed to the custody of the Bureau of Prisons for a term of imprisonment of 235 months.

 Mpounas' conduct warrants the imposition of a sentence at the high end of the Sentencing Guidelines range, which is 188–235 months. For the reasons articulated at Mpounas' original sentencing, this Court finds that such a sentence is warranted. At his original sentencing, this Court found that Mpounas was a leader of a narcotics operation and that he made many of the arrangements for the transactions. The quantities of both cocaine and heroin involved in his crimes were significant. In addition, Mpounas has other convictions, and committed these crimes while on probation for an earlier conviction. This Court notes, however, that this 235–month sentence is less than the original 248–month sentence imposed on Mpounas by this Court prior to vacatur of his Section 924(c) conviction.

Upon serving this term of imprisonment, Mpounas shall be placed on supervised release for a period of five years with the same special conditions as specified at his original sentencing, to wit:

1. That Mpounas not commit any crimes, federal, state or local;

2. That Mpounas abide by the standard conditions of supervised release recommended by the Sentencing Commission;

3. That Mpounas participate, if deemed necessary, in a program approved by the probation office for drug abuse, which program may include testing once every sixty days to determine whether petitioner has reverted to the use of drugs;

4. That Mpounas be prohibited from possessing a firearm or other dangerous weapon.

5. That Mpounas not incur new credit charges or open additional lines of credit without the approval of the Probation Department;

6. That Mpounas is to provide the Probation Department access to any requested financial information;

In addition, the fine imposed at Mpounas' original sentencing shall remain in effect. Accordingly, IT IS FURTHER ORDERED that on Counts One, Two, Three, and Four, Mpounas shall be required to pay a fine of $17,500 over the term of his supervised release in a manner to be determined by the Probation Department.

Finally, Mpounas' original sentence imposed mandatory assessments of $50 for each of the five counts on which he was convicted, for a total of $250. However, this assessment included $50 for the now-vacated Section 924(c) conviction. Accordingly, Mpounas' fine is reduced by $50, to a total of $200. To the extent that he has failed to pay an assessment of $200, if at all, IT IS THUS ORDERED that he does so. To the extent that he has paid over $200 in mandatory assessments, if at all, IT IS FURTHER ORDERED that any amount over $200 be returned to him.

SO ORDERED.